**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| GLOBAL PRINTING, INC., dba MYTHOS,<br>Plaintiff,<br>v.<br>ANTHROPIC, PBC,<br>Defendant. | Case No.<br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff GLOBAL PRINTING, INC. dba MYTHOS ("Plaintiff" or "Mythos") complains as follows:

## INTRODUCTION AND SUMMARY OF CLAIMS

1. Plaintiff operates an eponymous software platform that helps nonprofit institutions engage with their donors. Plaintiff connects donors' interests and goals to an institution's work, helping the institution tell its donors what their gifts have accomplished. Through the use of artificial intelligence ("AI"), Plaintiff's Mythos platform can automate personally relevant communications across every phase of the donor relationship. Plaintiff's Mythos platform is a success story, supporting donor communications at leading colleges, universities, foundations, and other nonprofits across the United States and Canada.

2. Plaintiff realized when developing the Mythos platform that the donor engagement market needed storytelling to demonstrate to donors how their gifts create real impact. Donors give because they want to improve their communities and society at large. For this reason, Plaintiff selected "Mythos" as the name for its platform. It is the ancient Greek word for a set of stories establishing a shared belief. Shared beliefs also drive philanthropy. Donors

give because they share a belief in a better future. Stories of philanthropic success provide evidence to support those shared beliefs. They demonstrate to donors how their gifts are, in fact, helping. The MYTHOS brand represents the stories that turn shared beliefs into actions and drive giving.

3. Plaintiff began using the MYTHOS brand as the name of its platform in October 2015 and has continued to use it ever since.

4. Plaintiff was an early adopter of AI to enhance the platform. Plaintiff eventually chose Anthropic as its partner to deliver agentic workflows for company clients. Plaintiff also promoted its use of Anthropic's Claude as the AI platform powering Plaintiff's Mythos platform based on Anthropic's claimed ethical approach to business: "Perhaps the simplest summary is that we want Claude to be exceptionally helpful while also being honest, thoughtful, and caring about the world."[1]

5. On April 7, 2026, Anthropic previewed an AI model it branded "Mythos." A draft blog post had previously disclosed the name of this new model when it was inadvertently made public in March 2026. In a statement to Fortune magazine, "an Anthropic spokesperson said the new model represents 'a step change' in AI performance and is 'the most capable we've built to date.'"[2]

6. Since then, Anthropic has released successively more advanced versions of the model it now markets under the MYTHOS brand (the "Anthropic Mythos Platform"). The most

---

[1] https://www.anthropic.com/constitution (last accessed Nov. 9, 2026).

[2] https://fortune.com/2026/03/26/anthropic-says-testing-mythos-powerful-new-ai-model-after-data-leak-reveals-its-existence-step-change-in-capabilities/ (last accessed Nov. 10. 2026).

recent release, on November 9, 2026, is Mythos 5.2, "[o]ur most capable model class for cybersecurity and biology research."[3]

7. Both Plaintiff's and Anthropic's Mythos platforms are what is known as Software as a Service ("SaaS") platforms. With two companies offering AI-related SaaS platforms using identical service marks, confusion is not only likely to result, it has already happened. As Anthropic continues marketing its release of the Anthropic Mythos Platform and improving its capabilities, consumers will continue to be confused as to the source, affiliation or sponsorship of the parties' products.

## PARTIES

8. Plaintiff is a corporation organized under the laws of Virginia, with a principal place of business located at 3670 Wheeler Avenue, Alexandria, Virginia 22304.

9. Anthropic is a Delaware public benefit company with a principal place of business located at 500 Howard Street, San Francisco, California, 94105.

## JURISDICTION AND VENUE

10. This is an action for trademark infringement of a registered trademark arising under the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*

11. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Anthropic transacts business in this state, is registered with the Virginia Secretary of State to do business here, sells and provides access to its software products and services directly to customers within

[3] https://www.anthropic.com/claude/mythos (last accessed Nov. 9, 2026).

this state and district (including Anthropic's Mythos Platform), and a substantial part of the events and omissions giving rise to the claims alleged here occurred in this district.

## BACKGROUND

### *Plaintiff Conceives And Invests Considerable Effort and Money to Develop Its Eponymous Platform*

13. Plaintiff was formed in 1979 as a commercial printer serving the Northern Virginia and Washington, D.C. areas, later pivoting to helping clients turn complex operational data into meaningful communications. After preparing printed materials for a university's donor office, Plaintiff conceived the idea of an internet application that would explain to donors how their donations or endowments impacted the real world and helped achieve the objectives of their generosity.

14. Plaintiff saw that donors wanted proof of human impact, not just financial stewardship. It paired the balance sheets with firsthand accounts from scholarship recipients. Donors responded strongly. That response showed what the market needed and that stories matter.

15. Plaintiff's goal was to tell stories at scale across hundreds of donor reports without losing the personal touch. Gathering and matching these stories by hand, however, was slow and tedious using commonly available tools like spreadsheets.

16. Plaintiff created a system that linked stories from the ultimate recipients of donor gifts – scholarship awardees, academic grantees, newly endowed chairs – directly to the university's database fields. For the first time, donor, fund, and story were linked in a single system.

17. Plaintiff formally launched Mythos as a software platform for donor relations in October 2015.

18. Through years of conferences, sponsorships, and client work, the MYTHOS brand has generated a strong reputation and considerable goodwill among donor relations (sometimes called “advancement”) professionals.

***Plaintiff Builds Artificial Intelligence Into Its Mythos Platform***

19. Plaintiff was an early believer that adopting AI in its Mythos platform would improve it by delivering greater utility to its customers. Plaintiff built a Model Context Protocol (MCP) server for its Mythos platform, providing it with an agent-based interface.

20. Plaintiff recently introduced “Mai” (short for “Mythos AI”), an AI assistant built into the Mythos platform that could handle and automate routine tasks. For example, Mai drafts beneficiary recipient surveys, summarizes stories, builds donor microsites, and imports content. Mai also pulls data, finds content, reads contact reports, and prepares initial drafts of donor proposals. Plaintiff also set up a beta user group to test and provide feedback on appropriate Mai use cases and controls.

21. Plaintiff follows three strict rules for AI in its Mythos platform. First, AI only supports human effort; it does not replace it. Second, every model is grounded in verified institutional data, limiting AI “hallucinations.” Third, humans oversee all operations and AI never acts without human oversight.

***Cybersecurity and Trust***

22. Plaintiff handles sensitive donor data and therefore has carefully cultivated its customers’ trust, which is important to its goodwill and success. Universities and healthcare nonprofits must believe that vendors like Plaintiff take appropriate steps to ensure protection of their data. Plaintiff has prepared Mythos for ISO 42001 certification, the international standard for AI management systems. The final audit is scheduled for later in November 2026.

***Plaintiff Owns Extensive Rights in its MYTHOS Mark***

23. Plaintiff has spent years and invested considerable resources marketing its Mythos platform to colleges, universities, foundations, and non-profits throughout the United States. As a result, the MYTHOS brand enjoys trademark protection under both state and common law where it is used in commerce – which is most, if not all, of at least the Continental U.S.

24. Plaintiff is also the owner of U.S. Trademark Registration No. 6,140,016 for MYTHOS, a true and correct copy of which is attached as **Ex. A** (the "Mythos Registered Mark"). The registration, which is valid and subsisting, issued in International Class 42 on the U.S. Patent and Trademark Office's ("PTO") Principal Register, and covers:

> Software as a Service (SAAS) services featuring software for creating customizable, searchable databases of information and software for collecting, storing, managing, manipulating, editing, tagging, and sharing user-generated content; Software as a Service (SAAS) services featuring software that enables users to create customizable surveys to facilitate and enhance marketing of content to target audiences.

This registration has since become incontestable under Section 15 of the Lanham Act (15 U.S.C. § 1065).

25. By virtue of Plaintiff's marketing and promotion of its Mythos platform, the MYTHOS mark embodies goodwill that is extraordinarily valuable to Plaintiff.

***Defendant Seeks to Register CLAUDE MYTHOS Despite Plaintiff's Extensive Rights in Its Mythos Mark***

26. On June 8, 2026, Anthropic filed two applications with the U.S. Patent and Trademark Office ("PTO") to register the mark CLAUDE MYTHOS. It filed one in International Class 009, which covers electronic, scientific, and digital apparatuses. Anthropic filed its other application in International Class 042, which covers scientific, technological, and

computer-related services, which is the same class in which Plaintiff secured the Mythos Registered Mark in 2020.

27. On October 20, 2026, the PTO rejected each of Anthropic's trademark applications in nonfinal office actions. Citing Plaintiffs' Mythos Registered Mark, the PTO concluded in each application proceeding: "Because the marks are similar and the goods and services are related, there is a likelihood of confusion as to the source of applicant's goods and services, and registration is refused pursuant to Section 2(d) of the Trademark Act."

***Anthropic Knowingly Disregards Plaintiffs' Rights to the MYTHOS Mark in Choosing It as the Brand Name of Its Own AI Platform***

28. Anthropic is a mature, highly sophisticated business and one of the largest AI companies in existence. It recently confirmed its plan to launch its initial public offering ("IPO") to take place on November 19, 2026 with a fully diluted IPO valuation of approximately $1.4 trillion. It is advised by highly regarded law firms.

29. Given Anthropic's relative sophistication regarding its business and intellectual property, Plaintiff is informed and believes and therefore alleges that before the public launch of the Anthropic Mythos Platform, Anthropic's trademark counsel performed trademark searches. The searches revealed Plaintiff's existing registration for the Mythos Registered Mark, and the registration's identification of goods and services that are similar to those that Anthropic planned to offer. As a result, Anthropic was aware that Plaintiff was already using its MYTHOS mark and that Anthropic's use of an identical or virtually identical mark would result in confusion between Plaintiff and Anthropic as to the source, affiliation or sponsorship of their respective AI services.

## FIRST CLAIM FOR RELIEF

**(Federal Trademark Infringement - 15 U.S.C. § 1114(1)(a))**

30. Plaintiff realleges and incorporates by reference paragraphs 1 through 29 above.

31. Plaintiff is the sole and exclusive owner of the Mythos Registered Mark.

32. Notwithstanding Plaintiff's rights in the Mythos Registered Mark, Anthropic is impermissibly using, without Plaintiff's consent, marks identical or confusingly similar to the Mythos Registered Mark in commerce in connection with its provision of the AI software platform and related services marketed under the brand name MYTHOS or CLAUDE MYTHOS.

33. Anthropic's unauthorized and wrongful use of a mark or marks identical or confusingly similar to the Mythos Registered Mark in connection with its SaaS AI platform has caused and is likely to cause confusion or mistake, or to deceive actual and potential purchasers or other relevant persons as to the source, affiliation or sponsorship of Plaintiff and Anthropic or as to their services.

34. Anthropic is thus liable under 15 U.S.C. § 1114(1)(a) for its past and continuing infringement of the Mythos Registered Mark.

35. Pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover its actual damages and/or Anthropic's profits from sales of access to the Anthropic Mythos Platform and related services, as well as the costs of this action.

36. Anthropic adopted the brand name MYTHOS in connection with its SaaS AI platform with actual or constructive knowledge of the Mythos Registered Mark but used the MYTHOS brand name in knowing, willful and deliberate violation of Plaintiff's exclusive right to use that mark in commerce in the United States. Anthropic's intentional infringement and bad

faith justify an award of enhanced damages under 15 U.S.C. § 1117(b) in an amount up to three times the actual damages.

37. Because this is an exceptional case under 15 U.S.C. § 1117(a)(3), Plaintiff should be awarded its reasonable attorneys' fees.

38. Unless Anthropic's acts of infringement are enjoined by the Court, its infringement will continue and Plaintiff will continue to suffer great and irreparable injury.

**SECOND CLAIM FOR RELIEF**

**Federal Unfair Competition (15 U.S.C. § 1125(a))**

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 29 above.

40. Anthropic's actions create, cause, and/or contribute to a false association between Anthropic's services and the services provided by Plaintiff. Anthropic thus causes and contributes to consumer confusion as to the origin of, or affiliation between Anthropic and Plaintiff and their services, have traded unfairly on Plaintiff's goodwill and reputation, and continue to do so.

41. Unless Anthropic's acts are enjoined by the Court, these acts of infringement will continue, and Plaintiff will continue to suffer great and irreparable injury.

42. The above acts by Anthropic constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43. The foregoing actions of Anthropic have been knowing, deliberate, willful, and in utter disregard of Plaintiff's rights.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

1. That Anthropic be directed to account for and pay to Plaintiff all damages suffered by Plaintiff as a result of Anthropic's wrongful conduct described above, including its

infringement of the Mythos Registered Mark and unfair competition, as well as to account for and disgorge all gains, profits and advantages derived by such wrongful conduct;

2. That such damages caused by Anthropic be trebled in accordance with 15 U.S.C. § 1117 because its unfair acts were done intentionally and therefore warrant enhanced damages and/or punitive damages as the Court may find appropriate;

3. For a permanent injunction pursuant to 15 U.S.C. §1116 restraining Anthropic and its affiliates, franchises, and subsidiaries from doing, abiding, causing, aiding or abetting any of the following:

a. Using the Mythos Registered Mark, or any colorable imitation or confusingly similar variation of the Mythos Registered Mark;

b. Making any other infringing use of the Mythos Registered Mark; and

c. Otherwise competing unfairly with Plaintiff in any manner;

4. That Plaintiff be awarded its attorneys' fees and costs under the provisions of 15 U.S.C. § 1117;

5. That Plaintiff be awarded prejudgment interest on any judgment amount;

6. That Plaintiff be awarded post-judgment interest on the foregoing sums at the maximum rate permitted by law from the date judgment is entered until paid; and

7. That Plaintiff be awarded such other and further relief as the court deems equitable, just and appropriate.

**JURY DEMAND**

Plaintiff respectfully demands a jury trial on all issues so triable.

Dated: November 13, 2026

SQUIRE PATTON BOGGS (US) LLP

/s/ *Adam R. Hess*
Adam R. Hess (VSB No. 47653)
2550 M Street NW
Washington DC 20037
(202) 626 6871
Adam.Hess@squirepb.com

David S. Elkins (to be admitted *pro hac vice*)
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 843-3378
David.Elkins@squirepb.com

Joseph A. Meckes (to be admitted pro hac vice)
550 California Street, Suite 1100
San Francisco, California 94104
(415) 954-0201
joseph.meckes@squirepb.com

*Attorneys for Plaintiff*
*Global Printing, Inc. dba Mythos*